# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LEONEL MICHEL VARGAS,<br><br>    Defendant | Case No.: CR-13-6025-EFS<br><br>**Motion and Memorandum To Suppress Evidence from Continuous Video Surveillance Pole Cam**<br><br>October 8, 2013 @ 1:45 p.m.<br>**With Oral Argument** |

MOTION

Defendant LEONEL MICHEL VARGAS moves the Court to suppress all evidence obtained by the police from the surreptitious, long term, continuous live and recorded video surveillance of the defendant's home with a pole camera capable of remote pan and zoom installed without a warrant.

This Motion is based upon the Fourth Amendment to the United States Constitution and the authorities set forth in the Memorandum of Authorities herewith filed.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 1

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

# MEMORANDUM

## SUMMARY OF ARGUMENT

It is respectfully submitted that a warrant is required for police to conduct a criminal investigation by secretly installing a pole camera with remote pan and zoom capability to acquire continuous, long term video surveillance of the area near the defendant's home. No warrant was requested, no exception applies, and all evidence derived from the video surveillance should be suppressed.

## SUMMARY OF FACTS

A gang task force secretly installed the video pole camera without requesting a warrant. They suspected the defendant was a participant in a drug trafficking organization. No information is provided to establish probable cause to believe that any criminal acts had taken place at the home. The police used the video device to secretly and continuously monitor and record all activities at the defendant's home. The defendant's home is located in a remote agricultural area north of the Snake River approximately 10.5 miles from the Franklin County Courthouse. Attached is a printout from Google Maps and a photograph printed from the Franklin County website which depict the remote home site. The video surveillance was a "fishing expedition" to further the criminal drug investigation by continously spying on the defendant, his home, his family and all visitors based upon unspecified hearsay information.

The camera was installed on April 4, 2013. On May 2, 2013, after nearly a month of surveillance, the defendant was observed (recorded) walking from his backyard to the frontyard to target shoot a pistol. A copy of the police report at Bates page No.

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 2

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

00000029, is attached. The target shooting activity confirms the remoteness and expectation of privacy. Later video surveillance revealed other firearms and target practice sessions. Further investigation showed that the firearms were shipped in interstate commerce and that the defendant was an undocumented alien. Agents <u>subsequently</u> obtained search warrants and seized firearms and contraband including drugs from the defendant's home and vehicles.

## ARGUMENT

The techniques and practices of video surveillance have developed to the degree that the practice of secret, prolonged, continous police video surveillance of the area near a home, like a surreptitious wiretap or gps monitoring of an automobile, is a search subject to the warrant requirement of the Fourth Amendment because such surveillance intrudes upon the defendant's reasonable expectation of privacy. Clearly, continuous, long term secret video surveillance of the home reveals information about daily activities and patterns of everyone living at the home or visiting that, as a practical matter, would remain private without the aid of the technology. <u>US v. Nerber</u>, 222 F.3d 597 (9th Cir. 2000) citing <u>US v. Taketa</u>, 923 F.2d 665 (9th Cir. 1991) and <u>US v. Cuevas-Sanchez</u>, 821 F.2d 248 (5th Cir. 1987).

The Defendant asserts this pole camera surveillance was a search subject to Fourth Amendment protection which required a warrant. <u>US v. Koyomejian</u>, 970 F.2d 536 (9th Cir. 1992); <u>US v. Nerber</u>, 222 F.3d 597 (9th Cir. 2000). No exception to a warrant applies and the evidence seized without a warrant should be suppressed as

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 3

fruit of the poisonous surveillance.  US v. Taketa, 923 F.2d 665, 677 (9th Cir. 1991); Nerber, supra at 605.

To establish Fourth Amendment Protection, an individual must show he has a reasonable expectation that his activities would be private, and that his expectation is one that society is prepared to recognize as reasonable.  United States v. Bautista, 362 F.3d 584 (9th Cir 2004); Nerber, supra.

Nerber, at 222 F.3d p. 606, note 9, states:

> This circuit has joined numerous others in holding that the Fourth Amendment imposes similar warrant requirements on the government's use of video surveillance as the wiretap statute imposes upon the use of audio surveillance.  See Koyomejian, 970 F.2d at 542.

Video surveillance is subject to higher scrutiny under the Fourth Amendment. Taketa, 923 F.2d at 675.  The Ninth Circuit has held that the Fourth Amendment forbids warrantless videotaping of a private office, id. at 678, and hotel rooms, Nerber, supra at 604.  Video surveillance of the home and curitillage has been subjected to Fourth Amendement analysis.  US v. Cuevas-Sanchez, 821 F.2d 248 (5th Cir. 1987). "Cuevas's expectation to be free from this type of video surveillance in his backyard is one that society is willing to recognize as reasonable."  Id. at 251.  See also US v. Maynard, 615 F. 3d 544 (D.C. Cir. 2010), re-hearing denied, sub nom. US v. Jones, 625 F. 3d 766 (D.C. Cir. 2010).

The court in Nerber, supra, reviewed several Fourth Amendment video surveillance cases and concluded that the nature of the intrusion by the government can effect a citizen's legitimate expectation of privacy.  That court recognized a "temporary

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 4

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

zone of privacy" may be protected from video surveillance even in a place not owned or ordinarily controlled.  That cout states At 222 F.3d 602-604:

      This principle has been applied in several Court of Appeals decisions as well.  In <u>United States v. Taketa</u>, 923 F.2d 665 (9th Cir. 1991), government agents, who suspected DEA agent O'Brien of wrongdoing, physically searched his office and installed a hidden surveillance camera.  The camera caught O'Brien and a co-worker, Taketa, conducting an illegal wiretapping operation.  We ruled that although Taketa did not have "standing" to challenge the physical search of O'Brien's office, he could invoke the Fourth Amendment to suppress the video surveillance of himself:

      Here, Taketa has no general privacy interest in O'Brien's office, but he may have an expectation of privacy against being videotaped in it . . . . Persons may create temporary zones of privacy within which they may not be videotaped . . . even when that zone is a place they do not own or normally control, and in which they might not be able reasonably to challenge a search at some other time or by some other means.

Id. at 676-77.

      In <u>United States v. Cuevas-Sanchez, 821 F.2d 248 (5th Cir. 1987)</u>, the court ruled that the installation of a surveillance camera on a power pole to videotape activities in a suspect's backyard constitutes a "search" within the meaning of the Fourth Amendment.  The Fifth Circuit, like the Supreme Court in Bond, distinguished cases involving surveillance of property from the air:

      To measure the government's intrusion we must consider the expectations of society.  Ciraolo teaches us that a fly-over by a plane at 1,000 feet does not intrude upon the daily existence of most people; we must now determine whether a camera monitoring all of a person's backyard activities does.  This type of surveillance provokes an immediate negative visceral reaction: indiscriminate video surveillance raises the spectre of the Orwellian state.  Here, unlike in Ciraolo, the government's intrusion is not minimal. It is not a one-time overhead flight or a glance over the fence

**MEMORANDUM IN SUPPORT OF**
**MOTION TO SUPPRESS- 5**

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

>by a passer-by.  Here the government placed a video camera that allowed them to record all activity in Cuevas's backyard.  It does not follow that Ciraolo authorizes any type of surveillance whatever just because one type of minimally intrusive aerial observation is possible . . . . Cuevas's expectation to be free from this type of video surveillance in his backyard is one that society is willing to recognize as reasonable.

Cuevas, 821 F.2d at 251.  While Cuevas had no legitimate expectation to be free from occasional "snooping" into his backyard from a passing airplane, he did have a legitimate expectation to be free from constant video surveillance.

>….

>The unmistakable message of these cases is that the legitimacy of a person's expectation of privacy may depend on the nature of the intrusion.  In assessing defendants' expectation of privacy under the facts of this case, we must consider the severity of the intrusion to which they were subjected.

>….

>The objective reasonableness of defendants' privacy expectation presents a closer question. The governmental intrusion was severe. Hidden video surveillance is one of the most intrusive investigative mechanisms available to law enforcement. The sweeping, indiscriminate manner in which video surveillance can intrude upon us, regardless of where we are, dictates that its use be approved only in limited circumstances. As we pointed out in Taketa, the defendant had a reasonable expectation to be free from hidden video surveillance because "the video search was directed straight at him, rather than being a search of property he did not own or control . . . . [and] the silent, unblinking lens of the camera was intrusive in a way that no temporary search of the office could have been." Id. at 677. As Judge Kozinski has stated, "every court considering the issue has noted [that] video surveillance can result in extraordinarily serious intrusions into personal privacy . . . . If such intrusions are ever permissible, they must be justified by an extraordinary showing of need. "  United States v. Koyomejian, 970 F.2d 536, 551 (9th Cir. 1992) (Kozinski, J., concurring). And, as the Fifth Circuit said, hidden video surveillance invokes images of the "Orwellian state" and is regarded by society as more egregious than other kinds of intrusions. Cuevas, 821

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 6

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

F.2d at 251. See also United States v. Mesa-Rincon, 911 F.2d 1433, 1442 (10th Cir. 1990) ("Because of the invasive nature of video surveillance, the government's showing of necessity must be very high to justify its use"); United States v. Torres, 751 F.2d 875, 882 (7th Cir. 1984) ("We think it . . . unarguable that television surveillance is exceedingly intrusive, especially in combination (as here) with audio surveillance, and inherently indiscriminate, and that it could be grossly abused--to eliminate personal privacy as understood in modern Western nations").

In <u>U.S. v. Anderson-Bagshaw</u>, No. 12-3074, 6th Cir., Dec. 19, 2012(Cert. Den. April 22, 2013), the majority held it was not necessary to decide in that case whether long-term video surveillance of curtilage requires a warrant, but in dicta states:

> Nonetheless, we confess some misgivings about a rule that would allow the government to conduct long-term video surveillance of a person's backyard without a warrant.  Few people, it seems, would expect that the government can constantly film their backyard for over three weeks using a secret camera that can pan and zoom and stream a live image to government agents.  We are inclined to agree with the Fifth Circuit that "[t]his type of surveillance provokes an immediate negative visceral reaction."  <u>United States v. Cuevas-Sanchez, 821 F.2d 248, 251 (5th Cir. 1987)</u> (stating in dicta that using a pole camera to view curtilage over a 10-foot fence constitutes a Fourth Amendment search).  We also note that Ciraolo involved a brief flyover, not an extended period of constant and covert surveillance.

The concurring opinion of Justice Karen Nelson Moore in <u>Anderson-Bradshaw</u>, supra would reach and hold that the Fourth Amendment protects against secret continuous video monitoring of residential property, and concludes at page 50-51 as follows:

> In <u>United States v. Oliver</u>, 686 F.2d 356 (6th Cir. 1982) (en banc), aff'd, 466 U.S. 170 (1984), even as we robustly affirmed the open-fields doctrine, we maintained that the Fourth Amendment "would protect a person in an open field."  686 F.2d at 360.  This makes sense, because the Fourth Amendment "protects people, not places." <u>Katz</u>, 389 U.S. at 351.  We explained that the Fourth Amendment principles articulated by courts protects privacy by "establish[ing] an environment in which

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 7

JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091

individual emotional and mental processes can develop freely without surveillance or interference." Oliver, 686 F.2d at 360 (emphasis added). This important freedom is threatened by the severely intrusive tactics used to monitor continuously Bagshaw's activities on her residential property- warrantless, long-term secret video surveillance. Bagshaw's expectation that she would not be monitored continuously on her own property is reasonable. In sum, I would hold that the video surveillance obtained using the pole camera in this case was an unreasonable search which violated Bagshaw's Fourth Amendment rights.

## CONCLUSION

The use of the pole camera here was an unreasonable search which violated the defendant's Fourth Amendment rights. Mr. Vargas has a reasonable expectation to be free from secret, long-term, continuous video surveillance of his home by police for a criminal investigation. The expectation is one society is willing to recognize as reasonable. The remote character of the defendant's home is such that his expectation of privacy in his front yard is equally as reasonable as the back. This is especially true in the context of intense, secret, long term, continuous video surveillance of the home including the front door.

The intrusive nature of secret, continuous, long-term video surveillance of the home, its residents and guests is spying by the police subject to Fourth Amendment protection. This was a fishing expedition conducted in violation of defendants reasonable expectation of privacy and without judicial sanction. A warrant was required. There is no applicable exception to the warrant. All evidence derived from the surveillance must be suppressed as fruit of the poisonous surveillance, including all firearms and drugs.

**MEMORANDUM IN SUPPORT OF**
**MOTION TO SUPPRESS- 8**

**JOHN S. MATHESON, ESQ.**
**315 W. KENNEWICK AVE.**
**KENNEWICK, WA 99336**
**(509)586-3091**

Respectfully submitted this 19th day of September, 2013.

s/John S. Matheson
JOHN S. MATHESON, WSBA No. 8288
Attorney for Defendant

**MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS- 9**

**JOHN S. MATHESON, ESQ.
315 W. KENNEWICK AVE.
KENNEWICK, WA 99336
(509)586-3091**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/EDF System which will send notification of such filing to the following: Alex Ekstrom, Assistant United States Attorney

                                                s/John S. Matheson_____
                                                John S. Matheson, WSBA No. 8288
                                                Attorney for Defendant