MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
ALEXANDER C. EKSTROM
Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, Washington 98901
(509) 454-4425

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>LEONEL MICHEL VARGAS,<br><br>　　　　　　Defendant. | No: CR-13-6025-EFS<br><br>GOVERMENT'S REPLY MEMORANDUM AND SUPPLEMENTAL MEMORANDUM REGARDING TAKING WITNESS TESTIMONY ON VIDEO SURVEILLANCE POLE CAMERA |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and Alexander C. Ekstrom, Assistant United States Attorney for the Eastern District of Washington, submits its reply briefing regarding the issue of taking witness testimony on the specific capabilities of the camera at issue in this case (ECF Nos. 88 & 95), and supplemental briefing regarding the concealment of the camera (ECF No. 97) as follows:

## I.   SUMMARY OF ARGUMENT

The Defendant and Amicus argue that an item in general public use cannot be worthy of protection under the law enforcement privilege. To the contrary, the concepts are not inconsistent. An asset, whether a person or item, can be known to others or ubiquitous, but still have law enforcement value derived from anonymity with respect to the target of the investigation. That anonymity is worthy of protection

1

because it furthers a proper law enforcement goal: the detection and prosecution of crime in present or future cases.  Assuming that the Court orders some form of disclosure, as opposed to ex parte submission and consideration by the Court, the disclosure should not only be sealed, but should be for "attorney's eyes only,"  and a protective order should issue prohibiting counsel for the Defendant from disclosing, in any form, the information to others, now or at any time in the future.

Because the concern in *Kyllo*[1], is whether the "device" or "technology" used to observe the area is "in general public use," the further one moves from the camera itself, to other aspects of the installation, first to how the images were recovered or transmitted, and then further to how the installation was concealed, the less hypothetically relevant the information could be to the *Kyllo* analysis.  Because no method of transmission or concealment could "cure" an image that was unconstitutionally acquired by the device in the first instance, the inquiry stops with the camera.  The actual method, among many possible methods of transmission or concealment is simply irrelevant to the inquiry, but remains worthy of protection under *Rovario*.

Amicus' suggestion that, during the course of surveillance, the law enforcement agency intentionally exposed its surveillance video of the Defendant to him by using a router inside the Defendant's residence to transmit the surveillance video is nonsensical.  There would be no reason to shield the camera from discovery, yet make the signal from the camera visible to an adversary.  While profoundly unwise, it of course remains a logical possibility.  To remove this issue, the Government therefore attaches a brief affidavit stating that law enforcement did no such thing.

## II.    FACTS

The facts remain as indicated in prior briefing.  (ECF No. 80).  The Government is, as indicated above, submitting a brief affidavit stating that it did not use the

---

[1] *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038 (2001).

Defendant's router or other fixtures on the Defendant's property to relay the signal from the video camera. *Attachment I.*

## III.    ARGUMENT

### A.    The Government stands by its prior arguments and believes Amicus has misconstrued its position in part:

The Government stands by its prior argument that, under settled law, recently cited with approval by the Supreme Court of the United States, visual surveillance of this intensity and duration is never a search, regardless of the mechanism used or mode of analysis. The citations and argument of the Defendant and Amicus do not contradict the Supreme Court's position on the subject. Further, the Government stands by its argument that, rather than any hypothetical or potential capability of the camera, the relevant inquiry is the manner in which the camera was actually used in this case. This information is accurately reflected in the totality of the information submitted and is sufficient for this Court to determine that this ambient light video-only recording from approximately 150 yards away did not constitute a search.

Rather than repeating those arguments, the Government would point out a misconception on the part of Amicus. (ECF No. 88, pg. 7). The Government is not arguing that the Court is limited to consideration of the two hour selection of the surveillance (ECF No. 72); the Government simply described the exhibit as "an accurate depiction" of the capabilities of the camera on May 6, 2013, and later indicated that the "complete output" of the camera was properly considered by the Court. (ECF No. 80, pgs. 2 & 6). The Government also stands by its argument that further information regarding the camera, or other aspects of its installation, are not necessary for this Court's determination of the issue before it under *Kyllo*.

### B.    Should the Court order filing under seal of information regarding the video camera it should be restricted to the Court and the Defendant's "attorney's eyes only":

The Government stands by its argument that, assuming the Court is unpersuaded by its argument that disclosure is not necessary; any additional information regarding the camera should be received and considered *ex parte*. The Government further recognizes that the Court has indicated that, based on briefing to date, it is inclined to require disclose, under seal, of "detailed information pertaining to the camera and technology" employed by law enforcement in this matter, with what the government understands to be a protective order, allowing access only to the Court, Defense counsel, and the Defendant. (ECF No. 97, pgs. 1-2). Without conceding its prior arguments, the Government would suggest that, with respect to the camera, should the Court require disclosure regarding the camera, that it further limit access to the Court and Defense counsel on an "attorney's eyes only" basis.

The Government interprets this Court's preliminary ruling as recognition of the existence of the law-enforcement privilege as to the entirety of the installation of the camera (including the concealment thereof) in the first instance, and relying on its prior briefing and submissions in support of the privilege's existence in this case. "General public use" and the law-enforcement privilege are not mutually exclusive. A confidential informant's law enforcement value is not that he or she lacks a name or is unknown in the community, but rather that a person considering the commission of a crime with the confidential informant does not know that the confidential informant is a law enforcement asset. Similarly, many ubiquitous devices, including cars and cameras, have law enforcement value; because those contemplating criminal behavior do not know which vehicle among many is the undercover vehicle. The disclosure of specific information in this area both destroys their present utility, compromises their future use, and potentially endangers those law enforcement officers who would seek to employ them. *In re The City of New York*, 607 F.3d 923, 942 (2nd Cir. 2010)("If we were to decline to grant this petition, we would risk discouraging law enforcement

4

agencies from conducting undercover investigations (or from keeping records of those investigations")(further citations omitted).

The *Rovario* balancing test is not a simple, mechanical "tip of the scale," or 50%+1 type of analysis.  In applying the test, courts have considered the defendant's "need [for] the evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting at the same point. The degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege."  *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *see also United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (the question is "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the qualified privilege"); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) (balancing defendant's need for information against importance of government's interest in avoiding disclosure).  Once a court has found that the law enforcement sensitive privilege applies, in this case due to the risk of future circumvention of the law or compromise of the technique, the Second Circuit has held "there ought to be a pretty strong presumption against lifting the privilege." *In re The City of New York*, 607 F.3d at 945 (*quoting Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 n. 22 (7th Cir. 1997)).  In *U.S. v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998), the Ninth Circuit held that in determining whether privileged information is "relevant and helpful to the defense of an accused," information meets the standard for disclosure "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

Here, assuming the Court orders disclosure in a form similar to its expressed inclination, there is simply no reason the Defendant needs to view detailed information pertaining to the camera himself, as opposed to disclosure under an "attorney's eyes only" basis.  The Defendant argues for disclosure, but does not assert

5

that his interests in the underlying motion hearing cannot be vindicated if only his counsel has access to the specifics regarding the camera.  (ECF No. 95, pgs. 1-3).  The Court should consider the Defendant's "need [for] the evidence to conduct his defense and [whether] there are...adequate alternative means of getting at the same point.  The degree of handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege."  *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982).  As the case law makes clear, even when disclosure is appropriate, the need for the information is balanced against the interests of the privilege, and the Court has the power to protect a valid governmental interest by limiting disclosure to "attorneys' eyes only," In *re The City of New York*, 607 F.3d at 949.  Assuming provision of this information to the parties and the Court[2], counsel for the Defendant can argue whether the camera used was and is in general public use.  There is, however, no need for the Defendant to have knowledge of detailed information relating to the camera for counsel to effectively assist his client.  There is the potential for great damage should this information become known.  *See United States v. Green*, 670 F.2d 1148, 1156 (D.C. Cir. 1981)(citing to an example of District Court directing disclosure as part of pre-trial motion practice of location of observation post to defense counsel, but issuing protective order prohibiting disclosure by defense counsel to "his client or anyone else").  Assuming disclosure is ordered, only the Court and counsel for the Defendant should have access to this information.  Further, a protective order should issue prohibiting counsel for the Defendant from disclosing, in any form, the information to others, now or at any time in the future.

**C.    Information regarding the technology used by law enforcement, other than the video camera itself, should not be disclosed pursuant to *Roviaro*:**

---

[2] Amicus does not argue that it has a right to this information.  (ECF No. 88).

While the Government is still preserving all of its prior arguments, the question in the second prong of *Kyllo* remains whether the technology or device used to obtain the information (here a video camera), was "in general public use." *Kyllo v. United States*, 533 U.S. 27, 34, 40 (2001). Assuming arguendo that the Government has an obligation to disclose the particulars of the camera to conduct this portion of the *Kyllo* analysis, the other technology is not relevant to this analysis. The camera is the only relevant item or technology because it is the only item or technology capable of "explor[ing] details of the home that would previously have been unknowable without physical intrusion..." *Kyllo* at 40. If its use is proper in the first instance under *Kyllo*, the manner in which the information it gains is stored and/or transmitted from the camera neither buttresses nor undermines the initial validity of its observation. The camera could have been physically connected by a wire to a monitor and controlling computer in an undercover van near the utility pole. In that instance, the relevant constitutional inquiry is still the image captured by the camera itself, not the means of extraction of the image. The same would be true if the camera were communicating with the same equipment in the same van via a wireless data connection, or in this case the equipment in TFO Clem's office. So long as the device used to capture the image itself does not violate *both* prongs of *Kyllo*, the manner by which the image was later recovered by law enforcement is not relevant. If the use of the device violates both prongs of *Kyllo*, nothing regarding the remainder of installation of the device matters.

The Defendant will presumably complain that unless the Government proves that the entirety of the transmission process is proven to be generally available, there remains an issue, and relevant information is being denied to him. However, taking this argument to its logical conclusion, a pole camera would never pass muster under this prong of *Kyllo*, as members of the public cannot realistically expect to receive permission to place their personal cameras on public structures, telephone poles or

otherwise.  If the camera itself is in general public use, and the public can use it in myriad similar ways, the way that the Government used it is irrelevant.  The information is thus neither "relevant and helpful to the defense" nor "essential to the fair determination of a cause."  *Rovario*, 353 U.S. at 60-61.

Even assuming for the purposes of argument some hypothetical argument for relevance from the Defendant, the balancing of the privilege would argue even more strongly in favor of *ex parte* disclosure to the Court only: particularly should the Court order disclosure of information with respect to the camera itself.  As the Government has argued in its ex parte submission to establish the privilege in the first instance, the harm in the disclosure of each additional detail is cumulative.   In applying the *Rovario* balancing test in a classified information privilege case, the D.C. Circuit has held that privileged information is not discoverable "on a mere showing of theoretical relevance . . . ."  *U.S. v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989).

### D.    Information regarding the concealment of the video camera, should not be disclosed pursuant to *Roviaro*:

The Government submits that the disclosure of any aspect of the concealment of the camera can be denied based on the above arguments as well, and that the arguments with respect to the concealment are stronger still.  The concealment is even further attenuated  or removed from the device that produced the image and it also was incapable of "explor[ing] details" of anything.  *Kyllo* at 40.  Knowledge of the particulars of the concealment is neither relevant nor helpful to the Defendant. *Rovario*, 353 U.S. at 60-61.  The complete lack of relevance to this motion is made clear by the example of *Green*.  In *Green*, the information of the location of an observation post was relevant to determine whether or not the officer's view was obstructed in connection with a suppression hearing.  *United States v. Green*, 670 F.2d at 1156-7.  Here, the Defendant has had, since July of 2013, the entirety of the video

8

surveillance in this matter, contained on a hard-drive.  The Defendant knows what officers observed because he has a complete record of their observations.  There is nothing to impeach.  Whether the concealment was in any one of the limited universe of items that would not seem out of place attached to a utility pole is irrelevant.  The only possible use of this information would be to defeat future concealments.  *See Green* at 1155 (including among the list of reasons supporting the law enforcement privilege that "....the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.")  Disclosure aids nothing, invites mischief and would hinder future investigations.

## IV.    CONCLUSION

The Government stands by its earlier argument, that disclosure of any additional information with respect to the camera itself is unnecessary.  In the alternative, if this privileged information is not considered *ex parte* by this Court alone, its release should be limited as indicated above to the Court and defense counsel only in a sealed filing, and a protective order should issue prohibiting defense counsel from disclosing, in any form, the information to others, now or at any time in the future.  With respect to any additional aspect of the installation, disclosure should be denied, based on a lack of relevance to the *Kyllo* inquiry, weighed against the strong interests supporting non-disclosure established by the privilege.  Assuming for the purposes of argument some speculative claim from the defense regarding relevance, any information regarding the communication technology should be considered *ex parte* by the Court alone.  *Ex parte* consideration would be necessary when balancing the claim against the strength of the privilege and the cumulative harm of additional disclosure should the Court order disclosure of information with respect to the camera itself.  Finally, the Government would submit that there is no

argument, speculative or otherwise, regarding the relevance of the concealment of the camera to *Kyllo* or any other claim in this matter.

DATED this 25th day of April, 2014.

MICHAEL C. ORMSBY
United States Attorney

s/ Alexander C. Ekstrom
ALEXANDER C. EKSTROM
Assistant United States Attorney

10

I hereby certify that on April 25, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: John Matheson, Robert M. Seines (for Electronic Frontier Foundation), Hanni M. Fakhoury (for Electronic Frontier Foundation), Jennifer Lynch (for Electronic Frontier Foundation).

s/ Alexander C. Ekstrom
Alexander C. Ekstrom
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
(509) 454-4425